# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| NATHANIEL SPENCER JOCELYN, DANIEL FRANCIS RYAN, and DRAKE DEWAYNE DYESS | ) ) ) ) | Case No. 12-8279-DLB |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 17, 2012,__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C); all in violation of Title 21, United States Code, Section 846. | Conspiracy to Possess with Intent to Distribute a controlled substance, namely 3,4-Methylenedioxymethamphetamine, a/k/a MDMA, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); all in violation of Title 21, United States Code, Section 846. |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Joseph Dixon
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/18/12

_____
*Judge's signature*

City and state: West Palm Beach, Florida    Hon. U.S. Magistrate Judge Dave Lee Brannon
*Printed name and title*

# AFFIDAVIT
# OF
# JOSEPH O. DIXON
# SPECIAL AGENT
# DRUG ENFORCEMENT ADMINISTRATION

I, Joseph O. Dixon, being duly sworn, depose and state as follows:

1. I am a Special Agent with the Drug Enforcement Administration (hereinafter referred to as DEA) and have been so employed for approximately two years. I am currently assigned to the Miami Field Division and was previously assigned to the Detroit Field Division. Prior to my employment with the DEA, I was employed as a Police Officer within the Brownstown Township Police Department in Detroit, Michigan for 7.5 years. During my employment with the Brownstown Township Police Department, I was assigned to the DEA Detroit Divisional Office for approximately 4 years as a DEA Task Force Officer.

2. I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code; that is an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18 and 21 of the United States Code. I have received extensive training in conducting illegal narcotics investigations and identifying the means and methods used by narcotics traffickers. During my law enforcement career, I have also participated in the execution of several arrests and search warrants in narcotics cases. Much of this training and experience has been directed at the detection, investigation, seizure, and prosecution of individuals involved in the manufacture, possession, and distribution of controlled substances. I am currently assigned to investigations dealing with all aspects of importation, manufacturing, possession, and distribution of controlled substances, to include cocaine hydrochloride, "crack" cocaine, marijuana, and MDMA.

3. The information contained in this affidavit is based on my personal participation in this investigation and from information provided to me by other special agents for DEA and other

1

federal, state and local law enforcement agents and officers. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint for Nathaniel Spencer JOCELYN (hereinafter referred to as JOCELYN), Daniel Francis RYAN (hereinafter referred to as RYAN) and Drake Dewayne DYESS (hereinafter referred to as DYESS), I have not set forth every fact known to me regarding this investigation. Rather, I have set forth only the facts I believe are necessary to establish probable cause for the arrest of JOCELYN, RYAN, and DYESS for the offense of Conspiracy to Possess with Intent to Distribute a controlled substance, namely 3,4-Methylenedioxymethamphetamine, a/k/a MDMA, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); all in violation of Title 21, United States Code, Section 846.

## FACTS IN SUPPORT OF PROBABLE CAUSE

4. In July of 2012, DEA began an investigation into the drug trafficking activities of JOCELYN after receiving information that JOCELYN was a distributor of MDMA. Based upon this information, DEA began its investigation and ultimately conducted a controlled purchase of approximately 551.66 grams of MDMA from JOCELYN.

5. Specifically, on July 6, 2012, a law enforcement officer acting in an undercover capacity (hereinafter referred to as UC-1) made contact with JOCELYN via cellular phone. UC-1 spoke to JOCELYN regarding the purchase of MDMA. JOCELYN agreed to meet with UC-1 to further discuss pricing, quantity, and delivery of the MDMA. On July 9, 2012, UC-1 spoke with JOCELYN to arrange a meeting to discuss pricing, quantity, and delivery of MDMA. On July 10, 2012, UC-1, along with another law enforcement officer also acting in an undercover capacity (hereinafter referred to as UC-2), made contact with JOCELYN. Thereafter, UC-1 and UC-2 met with JOCELYN at a restaurant located in Coconut Creek, Florida. During the recorded meeting with JOCELYN, UC-1 and UC-2 made arrangements to purchase 2,000 MDMA capsules. During

this meeting JOCELYN provided UC-1 and UC-2 with one (1) MDMA capsule as a sample. JOCELYN discussed the samples' purity level and agreed on a purchase price of $11,000.00 for the 2,000 capsules of MDMA. A field test was later conducted on the (1) MDMA capsule which yielded a positive result for the presence of MDMA.

6. On July 17, 2012, at approximately 7:20 p.m., UC-1 met with JOCELYN at 301 Southern Boulevard, West Palm Beach, Florida. JOCELYN arrived in a Gray Jeep Grand Cherokee. During the course of surveillance, law enforcement officers observed JOCELYN being followed by a second vehicle. Specifically, surveillance units observed the second vehicle to be parked in an area where the driver who was later identified as RYAN could observe the activities of JOCELYN and UC-1. Surveillance units observed JOCELYN park his vehicle in close proximity to UC-1's undercover vehicle. JOCELYN was observed as he exited his vehicle carrying a large brown paper bag. JOCELYN then entered UC-1's undercover vehicle and gave UC-1 approximately 2,000 capsules of MDMA. During the course of the controlled purchase of MDMA, surveillance units were able to monitor the entire transaction between UC-1 and JOCELYN.

7. Following the completion of the controlled purchase of MDMA, JOCELYN apparently noticed law enforcement and fled on foot. JOCELYN was taken into custody a short distance away. A field test of the suspected MDMA was conducted which yielded a positive result for MDMA with an approximate weight of 551.66 grams.

8. Following his arrest, JOCELYN was advised of his *Miranda* rights which he waived and agreed to speak with law enforcement. During a search of JOCELYN'S person, DEA agents seized an additional 30.66 grams of MDMA. During JOCELYN's post *Miranda* statement, he admitted that he was aware the MDMA was illegal. JOCELYN further advised law enforcement that RYAN was acting as security for the deal. JOCELYN advised that RYAN provided JOCELYN with approximately $7,000.00 in United States currency (hereinafter referred to as USC) to purchase

the MDMA from DYESS. JOCELYN stated that RYAN was aware that the monies were to purchase illegal narcotics. JOCEYLN stated that he agreed to pay RYAN back the $7,000.00 and an additional $2,000.00 for participating. JOCELYN stated that he and RYAN have partnered in other recent MDMA sales. JOCELYN advised that DYESS has provided him (JOCELYN) with MDMA for several months and DYESS has made statements to JOCELYN that he (DYESS) is also aware that MDMA is illegal. JOCELYN informed law enforcement that he paid DYESS $7,000.00 in USC on July 17, 2012, and received the MDMA from DYESS prior to meeting with UC-1. JOCELYN told law enforcement that he retrieved the MDMA from DYESS' residence. JOCELYN also informed law enforcement that DYESS had additional MDMA in his residence which JOCELYN observed when he picked up the MDMA for the controlled purchase with UC-1. JOCELYN stated he sells MDMA to supplement his income.

9. Following his arrest, RYAN was advised of his *Miranda* rights which he waived and agreed to speak with law enforcement. During RYAN's post *Miranda* statement, he admitted that he provided JOCELYN $7,000.00 for the purchase of MDMA. RYAN further stated that he was aware that the MDMA was illegal. RYAN told law enforcement he has engaged in additional prior MDMA sales with JOCELYN. RYAN stated that he followed RYAN to provide security and to make sure JOCELYN provided RYAN with his share of the illegal proceeds from the sale of the MDMA. RYAN stated he traveled with JOCELYN to DYESS' residence to ensure that JOCELYN received the MDMA. RYAN stated after leaving DYESS' residence he traveled with JOCELYN to another residence in West Palm Beach, Florida to retrieve RYAN's vehicle in an effort to provide security for JOCELYN. RYAN stated he retrieved the money used for the purchase of the MDMA from his banking institution on July 17, 2012. RYAN told law enforcement he sells MDMA to supplement his income. During a search incident to RYAN's arrest, law enforcement seized an undetermined amount of USC from RYAN. The monies were rubber banded in multiple

4

denominations and worn from street use which is consistent with monies used in the purchase and sale of narcotics.

10. Thereafter, law enforcement made contact with DYESS. DYESS provided law enforcement consent to search his home. During the search of DYESS' home, 113.46 grams of MDMA, 867.13 grams of other synthetic narcotics, as well as a large undetermined amount of USC contained in a banking institution's envelope were located and seized. Following his arrest, DYESS was advised of his *Miranda* rights which he waived and agreed to speak with law enforcement. During DYESS' post *Miranda* statement, DYESS advised law enforcement that on July 17, 2012, he sold MDMA to an unnamed subject. DYESS told law enforcement he received $7,000.00 in USC for the sale of the MDMA. DYESS would not provide law enforcement any further details relative to the sale of the MDMA.

Based upon the aforementioned facts, I respectfully submit that probable cause exists to believe that Nathaniel Spencer JOCELYN, Daniel Francis RYAN, and Drake Dewayne DYESS have committed the offense of Conspiracy to Possess with Intent to Distribute a controlled substance, namely 3,4-Methylenedioxymethamphetamine, a/k/a MDMA, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C); all in violation of Title 21, United States Code, Section 846.

AFFIANT FURTHER SAYETH NAUGHT.

SPECIAL AGENT JOSEPH O. DIXON
DRUG ENFORCEMENT ADMINISTRATION

Sworn to and subscribed before
me this 18 day of July, 2012.

DAVE LEE BRANNON
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Misc No. __12-8279-DLB__

IN THE MATTER OF THE APPLICATION
OF THE UNITED STATES OF AMERICA
FOR A COMPLAINT
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003? ___ Yes _X_ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007? ___ Yes _X_ No

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By: _____
Jennifer C. Millien (FL Bar No. 171700)
Email: jennifer.millien@usdoj.gov
Assistant U.S. Attorney
jennifer.millien@usdoj.gov
500 S. Australian Avenue
Suite 400
West Palm Beach, Florida 33401
TEL: (561) 820-8711
FAX: (561) 805-9846